UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Monica L. Lowe, | ) | No. 16 B 23451 |
| | ) | |
| Debtor. | ) | Judge Thorne |

## MEMORANDUM OPINION

This matter comes before the court for ruling on the motion of the U.S. Trustee Patrick S. Layng (the "U.S. Trustee") to dismiss the chapter 7 case of Monica Lowe (the "Debtor") for abuse under section 707(b)(3) of the Bankruptcy Code. The motion is well-taken. For the reasons set forth herein, the Debtor will be given 14 days to file a motion to convert her case to chapter 13. If no motion is filed, the case will be dismissed.

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law in uniformity with FED. R. BANKR. P. 7052. A separate judgment order will be entered pursuant to FED. R. BANKR. P. 9021

### A. Jurisdiction

The court has subject matter jurisdiction over this case under 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(A). A motion to dismiss under section 707(b) is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

### B. Background & Procedural History

The Debtor, an attorney with the City of Chicago, filed for bankruptcy relief under chapter 7 of the Bankruptcy Code on July 21, 2016. (Dkt. No. 1). She lists one dependent, her 8-year-old son, on her schedules. *Id.* at 40. The Debtor's annual gross income is approximately $115,000. *Id.* at 17. At the time the Debtor's petition was filed, she owned two properties, a

single-family home located at 9122 South Bell Avenue, Chicago, Illinois and a condominium located at 6926 South Cregier Avenue, Unit 3, Chicago, Illinois. *Id.* at 17-18. The mortgage balance on the condominium exceeded its value, and she elected to surrender it in her plan.[1]

The Amended Schedule J reflects approximately $5,460 in monthly expenses. (Dkt. No. 1, p. 41). Included in the monthly expenses are $500 in student loan repayments, $180 in tutoring costs for her son and $1,509 in mortgage payments for the single family home. *Id.* All other expenses are relatively routine for a two-person family.

Form 122A-2, the means test form, showed that the Debtor passed the means test in section 707(b)(2), and her case did not give rise to a presumption of abuse. (Dkt. No. 4, p. 8). The U.S. Trustee has not contested the means test calculation and has not disputed that there is no presumption of abuse.

The U.S. Trustee filed a motion to dismiss the Debtor's case under section 707(b)(3) of the Bankruptcy Code. (Dkt. No. 29). The U.S. Trustee argued that two of the Debtor's expenses were luxury expenses and moreover, that she was in the financial position to pay her creditors. Specifically, the U.S. Trustee alleges the payment for her son's tutoring and the payment of her nondischargeable student loans are luxury expenses and therefore abuses under the "totality of the circumstances" found in section 707(b)(3)(B) of the Bankruptcy Code. As such, the U.S. Trustee argues, her case should be dismissed.

In response, the Debtor admits that she has the ability to pay creditors, but her ability to make payments to her creditors is not sufficient grounds to find an abuse under the provision of section 707(b)(3)(B). She contends that under the "totality of the circumstances," grounds to

---

[1] A motion to modify the stay on the condominium was granted on December 20, 2016. (Dkt. No. 42).

2

dismiss do not exist as the U.S. Trustee needs to prove more than just financial ability to pay creditors.

### C. Discussion

The U.S. Trustee is correct that this case is an abuse of chapter 7. The expenses that the U.S. Trustee identifies aside, the Debtor has a high income and on a monthly basis has approximately $2,300 available to make payments to her creditors after deducting for expenses, including on-going payments on her student loan and payments for her son's tutoring. She has elected to surrender the condominium and eliminate that secured obligation which has left her with more disposable income than she would have otherwise had available prior to filing this case.

Section 707(b)(1) of the Bankruptcy Code permits the dismissal of a chapter 7 debtor's case if granting the debtor relief "would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). Under section 707(b)(2), the court must presume abuse if a debtor fails the means test. Under section 707(b)(3), however, a court may dismiss the case of a debtor who passes the means test, or who manages to rebut the presumption of abuse under section 707(b)(2), if the debtor filed the petition in bad faith or if "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A), (B); *Ross-Tousey v. Neary (In re Ross-Tousey)*, 549 F.3d 1148, 1161-62 (7th Cir. 2008).

"Totality of the circumstances," a phrase that appeared in section 707(b) even before BAPCPA's 2005 revision of the Bankruptcy Code, is not defined, and the Seventh Circuit has never addressed it in the context of chapter 7. *See In re Smith*, 286 F.3d 461, 466 (7th Cir. 2002) (stating that the Seventh Circuit has provided several factors to consider for "totality of the circumstances" in chapter 13 cases, *In re Rimgale*, 669 F.2d 426, 432 (7th Cir. 1982)); *but see In*

3

*re Neal*, 2014 Bankr. LEXIS 1581, *17-18 (Bankr. N.D. Ill. Apr. 8, 2014) (Schmetterer, J.) (explaining that some factors in *Rimgale* have since been "supplanted" by amendments to the Bankruptcy Code).

The post-BAPCPA structure of the statute, however, gives some guidance to its meaning. Section 707(b)(2) creates an objective test under which some cases are presumed abusive. Section 707(b)(3) permits dismissal even if a debtor passes the objective test, setting up a contrasting "totality of the circumstances" test that requires a more subjective, holistic assessment of the debtor and their circumstances. *In re Watts*, 557 B.R. 640, 646 (Bankr. N.D. Ill. 2016) (Schmetterer, J.); *In re Bacardi*, No. 09 B 25757, 2010 WL 54760, at *3 (Bankr. N.D. Ill. Jan. 6, 2010) (Goldgar, J.); *In re Sullivan*, 370 B.R. 314, 319 (Bankr. D. Mont. 2007) (describing section 707(b)(3) as "subjective"); *see also In re Haar*, 373 B.R. 493, 499 (Bankr. N.D. Ohio 2007) (calling section 707(b)(3) an "equitable test" as opposed to the "rigid, mechanical formula" in section 707(b)(2)).

In addition, the separate requirement in section 707(b)(3)(A) that the court dismiss a case when the petition was filed in "bad faith" indicates that a case can be dismissed for abuse under the "totality of the circumstances" test in (B) based solely on ability to pay and without, for example, proof of misconduct on the debtor's part. *Watts*, 557 B.R. at 646; *In re Deutscher*, 419 B.R. 42, 45 (Bankr. N.D. Ill. 2009) (Barbosa, J.); *In re Perelman*, 419 B.R. 168, (Bankr. E.D.N.Y. 2009).[2]

Before BAPCPA, the courts of appeals in six circuits had interpreted "totality of

---

[2] Some courts have held otherwise, *see, e.g., In re Nockerts*, 357 B.R. 497, 506–08 (Bankr. E.D. Wis. 2006) (holding that "more than the ability to fund a chapter 13 plan" must be shown to dismiss a case under section 707(b)(3)(B)), but these courts are a minority, *see, e.g. In re Boule*, 415 B.R. 1, 5 (Bankr. D. Mass. 2009) (declining to follow *Nockerts*); *see also In re Jensen*, 407 B.R. 378, 383 (Bankr. C.D. Cal. 2009) (same, and noting that "the majority of courts and commentators" disagree with *Nockerts*); *In re Parada*, 391 B.R. 492, 498 (Bankr. S.D. Fla. 2008) (same).

4

circumstances" by adopting open-ended, multi-factor tests. *See Costello v. Bodenstein,* No. 01 C 9696, 2002 WL 1821663, at *3 (N.D. Ill. Aug. 7, 2002) (citing cases). Except for the Fourth Circuit in *In re Green,* 934 F.2d 568 (4th Cir. 1991), these courts agreed that the primary factor in determining what the pre-BAPCPA version of the statute called "substantial abuse" (rather than merely "abuse") was the debtor's ability to repay his debts. *See Costello,* 2002 WL 1821663, at *4. These courts of appeals also concluded that an ability to repay debts standing alone could be sufficient to warrant dismissal, although other factors might be relevant. *Id.*

Other relevant factors include whether the debtor has a stable source of future income, whether their expenses can be reduced significantly without depriving her of adequate food, clothing, shelter and other necessities, whether the debtor incurred cash advances and made consumer purchases far in excess of her ability to pay, whether the debtor's schedules reasonably and accurately reflect her true financial situation or whether the case was filed because of sudden illness or calamity, disability or unemployment. 11 U.S.C. § 707 (b)(3)(B); *Bacardi,* 2010 WL 54760, *8. As such, the "totality of the circumstances" analysis is fact-intensive and performed on an individual case basis. *In re Krohn,* 886 F.2d 123, 127 (6th Cir. 1989): *In re Stewart,* 175 F.3d 796, 809 (10th Cir. 1999).

In this case, the Debtor has the ability to pay creditors even with the tutor and student loan repayments the U.S. Trustee argues are excessive. The Debtor has elected to surrender the condominium and now, as a result, has significantly more funds available on a monthly basis to pay creditors than she did when her petition was filed. The amended schedule J reveals that the Debtor has $2,312.77 available on a monthly basis after payment of all schedule I expenses. (Dkt. No. 40, p. 3).

The Debtor lists general unsecured claims on Schedule E/F in the amount of $10,897. (Dkt. No. 27, p. 15). In addition, she lists a student loan balance of $106,605. *Id.* No evidence has been presented that the student loan is in default. The court regards it as an on-going obligation that the Debtor can pay just as she would pay other obligations that come due postpetition. The Debtor could easily fund a chapter 13 plan while remaining current on her on-going nondischargeable student loan obligations and pay for her son's tutoring.[3] Moreover, the Debtor does not appear to owe any deficiency on her single-family home, so over the life of a chapter 13 plan she should be able to repay her general unsecured debts with ease. The excess monthly income of $2,312.77 is sufficient to pay back her general unsecured claims in five months. If she proposed a 36-month plan, she would be able to pay her general unsecured debt 100% for approximately $300 per month plus the chapter 13 trustee commission with substantial funds left over. 11 U.S.C. § 1325(b)(4)(B).

The Debtor has sufficient funds to pay her creditors. The court is not making a finding as to whether the student loan repayment or the tutoring payment are luxuries. It need not; as under the "totality of the circumstances"—that the Debtor has sufficient monthly income to pay her creditors—is enough to find abuse. She has surrendered her condominium and is no longer obligated to pay the expense disclosed on her means test related to the condominium. Money she saves because she is surrendering property is relevant in determining her ability to pay creditors for purposes of section 707(b)(3).[4] *See In re Demesones*, 406 B.R. 711, 714 (Bankr.

---

[3] The Debtor has not explained why tutoring for her son is necessary but for the sake of the discussion herein, the court will consider it a necessary expense. In the event this case is converted to a chapter 13, the Debtor should be prepared to explain why she believes this is necessary for her son.

[4] Although the U.S. Trustee did not raise this issue in their pleadings, the court can dismiss a chapter 7 case *sua sponte*. 11 U.S.C. s 707(b)(1) ("on its own motion"); *In re Gordon*, 2011 Bankr. LEXIS 3848, at *16 (Bankr. D. Colo. Mar. 25, 2011). Further, section 707(b)(3) provides that when a court is determining abuse under paragraph (1), "the court shall consider the totality of the circumstance." 11 U.S.C. § 707(b)(3)(B).

6

E.D. Va. 2008) ("A debtor's intent to surrender property . . . affects the debtor's anticipated future expenses and is a factor in the totality of the circumstances."); *In re Dowleyne*, 400 B.R. 840, 847 (Bankr. M.D. Fla. 2008) ("The Debtors' expense claims for mortgage and utilities payments for the surrendered house are not allowable deductions."); *In re Maya*, 374 B.R. 750, 754 (Bankr. S.D. Cal. 2007); *In re Masella*, 373 B.R. 514, 519 (Bankr. N.D. Ohio 2007).

It is an abuse of chapter 7 for the Debtor—a relatively high-income individual making $115,000 per year—who could easily repay her unsecured creditors with her excess income to receive a discharge in chapter 7.

## Conclusion

The Debtor will be given 14 days to file a motion to convert this case to a case under chapter 13. If no motion is filed in that time, the motion of the U.S. Trustee to dismiss this case under section 707(b)(3) for abuse will be granted. A separate order will be entered consistent with this opinion.

ENTER:

/s/ Deborah L. Thorne
Deborah L. Thorne
United States Bankruptcy Judge

Dated: December 29, 2016